Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/25/2020 08:08 AM CDT

Tammy M. Doerr, appellee, v.
Brian P. Doerr, appellant.
___ N.W.2d ___

Filed July 2, 2020.    No. S-19-418.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Divorce: Property Division.** In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.

5. **Property Division.** Equitable property division is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties.

6. **____.** As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

7. **Divorce: Property Division.** The marital estate does not include property that a spouse acquired before the marriage, or by gift or inheritance.

8. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.
9. **Divorce: Property Division.** Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur.
10. **Courts: Evidence.** A court is not bound to accept a party's word in lieu of documentary evidence; a court is able to assess the credibility of the evidence presented to it and determine to what evidence to give weight.

Appeal from the District Court for Dodge County: Geoffrey C. Hall, Judge. Affirmed.

Michael J. Wilson, of Berry Law Firm, for appellant.

Michael J. Tasset, of Johnson & Mock, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

The district court dissolved the marriage of Tammy M. Doerr and Brian P. Doerr. Brian appeals the court's property division. We affirm.

## BACKGROUND

Tammy and Brian met in March 2008 and were engaged later that year. The couple was married in April 2012. Both had children from previous marriages, but no children were born to the couple. Tammy filed for divorce in September 2016. A trial was held, and a decree dissolving the parties' marriage was filed February 19, 2019.

*Real Property.*

As relevant on appeal, the district court for Dodge County found that Tammy and Brian worked together to purchase

and remodel the couple's home on Howard Street in Fremont, Nebraska (Howard Street home), during the marriage. The court valued the home at $350,000. The district court found that Tammy invested $40,000 and that Brian invested $50,000 as a downpayment. The court further found that the funds used to pay for the home were commingled in the time before and after the purchase of the home. The district court therefore awarded the home to Brian, but awarded half of the home's value, or $165,000, to Tammy, less $10,000 to account for Brian's larger share of the home's downpayment.

*Bank Accounts.*

The couple had various bank accounts, some of which were jointly held and others which were individually held. At or near the time of separation, Tammy transferred funds from the parties' joint money market account with Union Bank into her individual checking account with another bank. The district court found that $108,600 of the funds transferred were marital and ordered an equal division—$54,300 to each party. The parties' other bank accounts were awarded to the party in whose name each respective account was held.

*Debts.*

The district court ordered that each party should pay marital debts held in their respective names, as well as debts individually incurred since the filing of the divorce action.

*Equalization Payment.*

Based on the court's determination of the various equity shares of each of the parties, the district court ordered Brian to make an equalization payment to Tammy in the amount of $110,700.

### ASSIGNMENTS OF ERROR

Brian assigns that the district court erred in (1) awarding Tammy $165,000 in equity in the Howard Street home, (2) awarding Tammy $54,300 from the Union Bank account,

(3) failing to award Brian $12,831.67 in funds held in a U.S. Bank account controlled by Tammy, (4) failing to order Tammy to pay one-half of $16,207.76 in debts, and (5) ordering Brian to pay an equalization payment to Tammy in the amount of $110,700.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[1]

[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[2]

[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[3]

## ANALYSIS

On appeal, Brian's argument centers around what he claims are the proceeds from his separate property, and he alleges that the district court erred in awarding half of those proceeds to Tammy. In summary, Brian argues that he paid the entire $262,000 purchase price of the Howard Street home from the proceeds he earned selling a home he had owned in Fontanelle, Nebraska. Brian further asserts that the remainder of the proceeds were deposited into the couple's money market account and that the balance of that account never dipped below the amount of the proceeds he deposited.

---

[1] *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020).

[2] *Id.*

[3] *Id.*

Tammy later transferred $108,600 from that money market account into her individual checking account. Brian contends that those funds are traceable to the sale of his separate property, that the funds are themselves separate property, and that the district court erred in awarding Tammy half of that amount.

[4-6] In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.[4] Equitable property division is a three-step process.[5] The first step is to classify the parties' property as marital or nonmarital.[6] The second step is to value the marital assets and marital liabilities of the parties.[7] The third step is to calculate and divide the net marital estate between the parties.[8] As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.[9]

[7-9] The marital estate does not include property that a spouse acquired before the marriage, or by gift or inheritance.[10] The burden of proof rests with the party claiming that property is nonmarital.[11] Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists.[12] Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse.[13] If the separate property remains

---

[4] Neb. Rev. Stat. § 42-365 (Reissue 2016).

[5] *White, supra* note 1.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

segregated or is traceable into its product, commingling does not occur.[14]

*Equity in Howard Street Home.*

In his first assignment of error, Brian argues that the district court erred in awarding Tammy roughly half of the equity in the Howard Street home, contending he proved at trial that he contributed all of the purchase price of the home. He also assigns that the district court erred in valuing the home at $350,000.

We turn first to the value of the martial home as determined by the district court. The record includes numerous values for the home, but one of those values was $350,000, a value determined by a real estate professional. The district court did not err in placing this value on the home.

We turn next to Brian's contention regarding Tammy's equity in the home. Brian contends that he paid the $1,000 "earnest deposit" on the residence and paid the entire $50,000 downpayment. Brian further asserts that he sold his house in Fontanelle and that with those proceeds, he paid off the debt on the Howard Street home. Conversely, Tammy argues that she paid $40,000 of the downpayment for the Howard Street home with cash she had in her safe.

The facts surrounding the Howard Street home are somewhat complicated. The property was purchased by Brian in April 2012 for $262,000. At the closing, there was a balance due of $259,691.63, which credited the purchase price in various particulars, including an earnest payment of $1,000.

There is nothing in the record to show how the funds at the closing of the Howard Street home were paid. Brian argues that he came up with $50,000—a combination of $10,000 cash and $40,000 from various other sources, including liquidating his son's college savings plan and taking at least two withdrawals from his individual retirement account. Brian testified that this money was not so much a downpayment as funds that

---

[14] *Id.*

were owed because the house did not appraise out and the bank would not fund the entire purchase price.

Brian offered into evidence statements showing the college savings plan and the individual retirement account transactions, as well as deposit slips he testified were for a combination of cash and check deposits. Tammy relies on many of the same deposit slips to show that she had given Brian $40,000 to deposit in the bank. Tammy testified that she had this money prior to the marriage and even when she declared bankruptcy, but that she had not declared the money in the bankruptcy proceedings.

The burden to show that the Howard Street home was paid for with proceeds from the Fontanelle home, and thus was Brian's separate property, was on Brian. Brian offered documentation that certain deposits had been made in the time prior to the closing on the house. He also testified that the full amount of the money he deposited was his and that the money actually went to paying the downpayment on the Howard Street home.

[10] Of course, a party's testimony alone may sustain that party's burden of proof. But a court is not bound to accept a party's word in lieu of documentary evidence; a court is able to assess the credibility of the evidence presented to it and determine to what evidence to give weight.[15] In this case, the district court found Brian's testimony and his accompanying documentary evidence not credible and therefore found that the Howard Street home was marital property. Accordingly, the district court awarded roughly half of the home's equity to Tammy. We cannot find that this decision was an abuse of discretion. There is no merit to Brian's first assignment of error.

*Bank Accounts.*

In his second and third assignments of error, Brian argues that the district court erred in its division of the parties' bank

---

[15] See *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

accounts. Most notably, Brian argues the district court erred in awarding Tammy $54,300, which he claims were proceeds from the sale of the Fontanelle house, and thus his separate property, that were deposited into the couple's money market account.

It is not disputed that Brian had proceeds of $187,399.82 after the sale of the Fontanelle property. Brian maintains these proceeds were deposited into his checking account, less the payment of some taxes, and deposited into the couple's money market account to be used only as a cushion for the couple's checking account. Therefore, the proceeds are traceable and remain his separate property up to at least $117,000.

There is nothing in the record to support Brian's assertion that the money was transferred as he contends. According to the bank statement for January 4 to February 4, 2014, there was a beginning balance of $150,000.41 in the money market account. But those same records show that during the same statement period, $35,588.37 was deposited into that account. There is no indication that the account had not previously existed or that the proceeds of the sale of the Fontanelle house were $150,000.41. It is Brian's burden to show that the funds were separate property. The district court concluded that he failed to do so, and we find no error in that conclusion.

By extension, then, when Tammy emptied the money market account a few years later, she had a right to those funds. The district court did not err in awarding Tammy half of the $108,600 in her possession and in awarding the other half to Brian.

In addition to the Union Bank account, Tammy had a separate checking account with U.S. Bank with a balance of approximately $12,831.67. Brian argues that he is entitled to one-half of that amount because Tammy did not prove it was her separate property.

But Tammy did not argue it was her separate property. The district court awarded Tammy the accounts in her name and awarded Brian the accounts in his name. It was not error for

the court to award the accounts in this manner, and there is no merit to Brian's second and third assignments of error.

*Debts.*

In his fourth assignment of error, Brian assigns that the district court erred by not equally dividing marital debt comprising a U.S. Bank credit card balance of $6,439.76 and a bill for preseparation renovations for $9,768. There was documentary evidence of these debts in the record; however, the district court simply ordered each party to pay all debts in that party's name, as well as debts individually incurred by each since the filing of the divorce action. The court reasoned that it "cannot and will not account for which party paid for the butter or which party paid for the eggs during the course of the marriage."

The amount of debt at issue here is approximately $8,000. Even assuming that the court should have ordered Tammy to pay that portion of the debt, such would not make the district court's division of property erroneous. The court's reasoning that it was not going to parse out every purchase supports its conclusion. There is no merit to this assignment of error.

*Equalization Payment.*

Having concluded that the district court did not err in its division of the marital estate, we likewise find no merit to Brian's contention that the amount of the equalization payment was in error. As such, there is no merit to Brian's final assignment of error.

## CONCLUSION

The decision of the district court is affirmed.

Affirmed.