IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


FINCH V. FINCH


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


LEI ANN FINCH, APPELLANT,

V.

JASON MARK FINCH, APPELLEE.


Filed April 6, 2021.    No. A-20-489.


Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed as modified.

Donald A. Roberts and Justin A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., for appellant.

John A. Kinney and Jill M. Mason, of Kinney Mason, P.C., L.L.O., for appellee.


PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Lei Ann Finch appeals from the decree of dissolution entered by the district court for Douglas County which dissolved her marriage to Jason Mark Finch. On appeal, she argues that the district court abused its discretion by not including the value of the parties' retirement account and life insurance policies in its calculation of the net marital estate and equalization payment. She also argues that the court abused its discretion in its valuation of several items of personal property and that the court should not have found that any portion of the equity in the marital residence was nonmarital. For the following reasons we affirm the district court's order as modified.

- 1 -

## II. BACKGROUND

Jason and Lei Ann were married on December 5, 1995. Six children were born of the marriage, four of which were under the age of 19 at the time of trial. Lei Ann filed a complaint for dissolution of marriage on October 10, 2017. She requested sole legal and physical custody of the parties' minor children, an order for permanent child support, an equitable division of real and personal property and the debts of the parties, an award of spousal support, and attorney fees. On November 13, Jason filed an answer and counterclaim. Trial was held on August 21 and 26, 2019.

The evidence presented at trial revealed that after their marriage in 1995, the parties moved to Des Moines, Iowa, and purchased a house. In order to make a downpayment, Jason sold his premarital vehicle and $7,000 of the proceeds from this sale were applied to the downpayment. The parties later moved to Fayetteville, Arkansas, and then to Denison, Iowa. They bought a house in Denison with the proceeds from the sale of the house that they had previously owned in Des Moines. After living in Denison they bought a house in Omaha, Nebraska. According to Jason's trial testimony, the $7,000 in equity from the Des Moines home followed them to their current marital residence in Omaha. Lei Ann testified similarly during her cross-examination, explaining that as far as she knew the $7,000 from Jason's premarital funds used for the downpayment for their first house in Des Moines followed them to every subsequent house that they purchased. Jason admitted in a deposition that they "broke even" when they sold the house in Denison. Nevertheless, at trial, he testified that he thought the $7,000 of premarital funds utilized to purchase the home in Des Moines still transferred into the residences they purchased in Omaha. He testified that while they only broke even on the sale of their residence in Denison, there still were proceeds from the sale which were used to purchase their home in Omaha. The court found that $7,000 of the equity in the marital home should be set off to Jason as a nonmarital asset.

During the pendency of the case, an appraisal was completed on the marital residence in Omaha. This appraisal valued the marital residence at $875,000. In the appraisal, there was a picture of the pool area which included a hot tub. After the parties' separation, Jason purchased a new hot tub for $8,000. This hot tub replaced an older one which Jason claimed had broken down. Jason testified that he believed the value of the hot tub was included in the appraisal of the home. He testified that the hot tub pictured in the appraisal report was the new hot tub he had purchased. The appraisal was completed in June 2018. Lei Ann contended that the hot tub should not be considered part of the appraisal but should be separately valued as personal property. In its decree, the court did not categorize the hot tub as an asset to be valued separately from the marital residence.

An appraisal was also completed of household goods located both at the marital residence occupied by Jason and at the house Lei Ann had rented. Lei Ann testified that there were many items of personal property located at Jason's residence that were not included within this appraisal. She created a list of these items and estimated that the total fair market value for the items not included in the appraisal was $16,760 which included $8,000 for the hot tub. A separate personal property appraisal was completed on firearms, tools, equipment, and other items in Jason's possession. The combined value of these items was $4,551 according to the appraisal. Jason conceded that this property value was not included in Lei Ann's listing. Jason contended that some of the items in this appraisal were nonmarital. His list of nonmarital items was received as exhibit

76. He testified that in his opinion, the combined value of marital household items, tools, and firearms in his possession was $10,000. The items alleged to be nonmarital included in exhibit 76 also appear in the appraisal. The combined appraised value of those items is $535. Lei Ann's estimate of the value of all of the items of personal property in Jason's possession would range from $12,000 to $13,000, excluding the hot tub. The court ultimately found that the value of personal property in Jason's possession (excluding other specifically listed items not contested here) was $8,265 which was then awarded to him.

The parties owned several vehicles. Jason testified that his brother gave him a 1976 Ford F-250 approximately 2 years prior to trial and thus claimed that the vehicle was nonmarital property. On cross-examination, he admitted that he had no documentation to support his claim that the vehicle was a gift. Moreover, in his answers to interrogatories, Jason listed this vehicle as a marital asset. We note that in Jason's proposed division of marital assets he also lists the 1976 F-250. In the listing, he notes "non-marital" under it, but then proceeds to include its value on his side of the ledger for purposes of the division of marital property. The court followed the same procedure. The court did not separately list this pickup with the other premarital property found in paragraph 23. But in its balance sheet found in paragraph 24, the court listed the vehicle as having a value of $5,400 and placed that value on Jason's side of the ledger even though it noted "Non-marital" under the entry. Jason has not cross-appealed on this issue. Therefore, the ultimate inclusion of the vehicle's value as a marital asset is not before the court. The only issue before the court is the valuation of the vehicle. In his answers to interrogatories, Jason valued the vehicle at $10,000. However, he testified at trial that the current value of the truck was $5,400. He also submitted into evidence a valuation created by a third-party appraiser of the 1976 Ford F-250 which showed a value of $5,400. The court found the value of the 1976 Ford F-250 to be $5,400.

The parties also owned a 2005 Ford Ranger Super Cab XLT. In his answers to interrogatories, Jason stated that the value of this vehicle was $5,000. However, at the time of trial, Jason testified that this vehicle had no value according to Kelley Blue Book. Jason submitted his valuation which listed the vehicle having a value of zero. To explain the discrepancy between his discovery response and his trial testimony, Jason testified that one of the children had further damaged the back end of the vehicle after he submitted his discovery response. The vehicle already had damage to the front-end prior to his submission of discovery responses but according to him was still worth a "couple thousand" dollars. According to the Kelley Blue Book valuation report, the vehicle had zero value given this damage. Despite the damage, Jason testified that the vehicle was still drivable. The court found that the vehicle was worth $3,000.

The other two vehicles listed in the parties' assets were a 2014 Ford F-150 and a 2018 Ford F-150 both of which were listed as being owned by Jason's law practice. According to an appraisal conducted of the business, these vehicles were given a combined value of $98,500. Jason, through his business, purchased the 2018 Ford F-150 in 2018, after the parties separated. There was a loan of $56,680 to finance the vehicle, however, at the time of trial, the balance on the loan was reduced to approximately $44,600. According to the National Automobile Dealers valuation report that Jason submitted, the 2018 Ford F-150 had a value of $53,100. Jason asked for the court to use the original loan balance to determine the net value of the vehicle because the vehicle was purchased after the parties separated. The court found that as of the point in time the 2018 F-150 should be valued, the indebtedness was more than the value of the vehicle. As a result, the value for purposes

of the marital estate was placed at $0. The 2014 F-150 was valued at $19,115 and was awarded to Jason.

The parties agreed that a Northwestern Mutual IRA held in Jason's name with a value of approximately $198,000 was a marital asset. The parties also agreed that life insurance policies with cash value existed as to each of them and that the cash value was a marital asset. The court ultimately found that the IRA and the cash value of the life insurance policies should be divided evenly. The court did not include any specific values for these assets in its reconciliation of the marital estate. The district court entered the decree of dissolution on May 18, 2020.

## III. ASSIGNMENTS OF ERROR

Lei Ann assigns, restated that the district court erred in failing to include the value of the IRA and the life insurance policies in its division of marital property. Lei Ann also alleges that the district court erred in failing to include the correct value of personal property awarded to Jason and at least in part, failed to apply proper valuation dates that rationally related to certain assets and debts.

## IV. STANDARD OF REVIEW

In an action for dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination as to property division. This determination however, is initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012); *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009). An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or its action is clearly against justice or conscience, reason, and evidence. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005).

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## V. ANALYSIS

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *White v. White, supra.* Section 42-365 authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *White v. White, supra.*

## 1. Northwestern Mutual IRA and Life Insurance Policies

On appeal, Lei Ann argues that the court erred in its valuation and distribution of property from the marriage. She first argues that the court erred by not including the value of the Northwestern Mutual IRA in the equalization payment that was to be paid to her. Upon our de novo review of the record, we find no abuse of discretion.

The district court used a balance sheet to divide the majority of the parties' property. This balance sheet does include a figure demonstrating the balance of the account as of the date of separation. However, rather than carrying this amount over to the actual division of property, the court simply awarded each party 50 percent of the value contained in the account. Therefore, the value of the IRA is not reflected in the total assets of the parties, nor is it taken into consideration for purposes of an equalization payment. While we agree with Lei Ann that it may have been desirable for the court to have more explicitly directed the parties to execute the necessary documents to divide the IRA equally, that direction can be inferred from the decree. The testimony at trial clearly demonstrated that the IRA was a marital asset and that Jason had made no post separation contributions to it. Therefore, any growth or loss to the balance would be solely attributable to market conditions. As such, awarding each party 50 percent of the IRA fairly and appropriately divides its present value. In order to clear up any ambiguity as to how this division shall be accomplished, we direct Lei Ann to prepare and both parties to execute all necessary documents to equally divide the IRA within 60 days following the issuance of the mandate herein.

The five life insurance policies in Jason's name which carried cash value were listed on the balance sheet similarly to the IRA. The cash values were shown as of the date of separation, but as with the IRA, the court showed each party was to receive 50 percent of the cash value of each of these policies. The court listed one life insurance policy in Lei Ann's name. No value for that policy was listed on the balance sheet. Rather the entry refers the reader to paragraph 21 of the decree. That paragraph provided that the policy in Lei Ann's name be maintained by her with the children as beneficiaries. That paragraph then recites "Each party is awarded as their sole and separate property any cash value contained as part of their policy." Thus, as to Lei Ann, the decree clearly granted her any cash value held in policies held in her name. However, as to Jason, there appears to be a conflict in the decree, with paragraph 21 granting him the cash value of the policies in his name, but the balance sheet dividing that cash value 50/50.

Both parties filed motions for new trial or in the alternative to alter or amend following the entry of the decree. The court cleared up the conflict as to Jason's policies by ordering that the following sentence be added to paragraph 21: "The findings within this paragraph do not involve any life insurance policies or cash value thereto specifically incorporated within the Decree of Dissolution as set forth in the attached balance sheet." As such, the final operative order of the court is that Lei Ann is awarded the cash value of her policy, but that the cash value of Jason's policies should be equally divided. The court again did not direct any specific preparation of documents to accomplish this goal nor did the court place the total cash value of Jason's policies on the ledger for purposes of an equalization payment. The court also did not place the cash value of the policy awarded to Lei Ann on the balance sheet for purposes of equalization.

Lei Ann argues that rather than ordering a 50/50 split of each of the policies in Jason's name, the court should have simply awarded Jason's policies to Jason and then include all of the cash value of the policies as valued at the time of separation in the balance sheet, thus expanding the value of the marital estate. Then the court could order Jason to make an equalization payment based on the total amount of marital assets listed therein. Jason agrees in part. Jason argues that the court should have made clear that the cash values of the policies awarded to both parties should have been divided and further argues that the cash value that should be divided evenly should be the cash value as of the date of separation, not the cash value as of the time of the decree. We note that the parties agreed on this point at trial. In Lei Ann's suggestions to the court, she asked that each party be awarded their individual life insurance policies with the attendant cash value. Jason's proposed balance sheet listed the cash value of all of the policies, awarded each of the parties the policies in their name, and then included that value in the marital estate and in the ultimate equalization payment that would have to be made.

We find that the district court abused its discretion in the manner it divided the cash value of the insurance policies. First, the court failed to include the value of the policy awarded to Lei Ann in its balance sheet. Second, we agree with the parties that as to life insurance, the proper date for valuation is the date of separation. Unlike the IRA, other factors beyond market conditions would affect the cash value of the policy such as payment of additional premiums. Therefore we modify the decree to provide that the cash value of Lei Ann's policy in the amount of $3,782 should be awarded to her and that the combined cash value of Jason's five policies in the amount of $73,588 be awarded to him as more specifically set out in the balance sheet appearing later in this opinion. Those totals will then be included in the marital estate which is subject to equalization.

## 2. VALUE OF MARITAL PROPERTY

In her brief on appeal, Lei Ann argues that the district court made numerous errors in its valuation of the property contained in the marital estate. We address each of her arguments individually.

### (a) Equity in Marital Residence

Lei Ann argues that the district court erred in finding that $7,000 of the equity in the marital residence should be awarded to Jason as a nonmarital asset. The effect of this finding reduces the value of the marital portion of the equity in the residence from $103,205 to $96,205. While Lei Ann concedes that Jason used nonmarital funds in the amount of $7,000 to pay for the downpayment on their first home in Des Moines, she argues that this nonmarital contribution cannot be traced from the original home purchase through the purchase of two other residences and then into the purchase of their current marital home. She asserts that Jason simply failed to meet his burden of proof to demonstrate that his original $7,000 contribution followed them to their current residence.

As a general rule, property which one party brings into the marriage is excluded from the marital estate; however, the burden of proof to show that property is a nonmarital asset remains with the person making the claim that it is nonmarital. *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018). To the extent that Lei Ann argues that Jason must provide documents to meet his burden of proof on tracing the equity, we disagree. A party's testimony alone may sustain a party's

burden of proof but a court is not bound to accept a party's word in lieu of documentary evidence. *Doerr v. Doerr*, 306 Neb. 350, 945 N.W.2d 137 (2020). While documentary evidence may be more persuasive, it is not required. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). A trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. *Id.* There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits. *Id.* Of course, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion. *Id.*

Here, there was little dispute in the testimony as to whether the $7,000 nonmarital contribution used to purchase the parties' first home in Des Moines passed through the parties subsequent homes in Denison and Omaha to the current marital residence. Lei Ann conceded that the $7,000 downpayment for their first house was from Jason's nonmarital property. While Jason did state during his deposition that they "broke even" on the house they owned in Denison, he testified at trial that he did not mean to infer that no proceeds were received when they sold that house. Jason clearly testified that in his view there were sufficient proceeds for the $7,000 to carry forward to the parties' current residence. In cross-examination Lei Ann was directly asked whether the $7,000 used to purchase their first house carried through in the equity used to purchase their subsequent homes. She responded that "[a]s far as [she] know[s]" it did. Based on our de novo review of the record, we cannot say that the district court abused its discretion in considering that $7,000 of the equity in the marital home should be awarded to Jason as a nonmarital asset, thereby reducing the value of the marital portion of the equity in the house to $96,205.

### (b) 2005 Ford Ranger Super Cab XLT and 1976 Ford F-250

In her brief on appeal, Lei Ann argues that the court erred in determining that the value of the 2005 Ford Ranger Super Cab XLT was $3,000. She asserts that Jason stated in his discovery responses that the value of the vehicle was $5,000. She argues that the difference in value of the 2005 Ford Ranger Super Cab from his discovery responses to the value he testified to at trial was "inexplicable." Brief for appellant at 20. She also argues that Jason's value of the 1976 Ford F-250 at trial of $5,400 was given without explanation when Jason previously stated in his answers to interrogatories that the value of the 1976 Ford was $10,000.

The owner of the property is entitled to express his or her opinion as to the value of the property. See *Thompson v. Thompson*, 18 Neb. App. 363, 782 N.W.2d 607 (2010). However, the trial court is not required to accept the owner's opinion. *Id.* In *Staman v. Staman*, 225 Neb. 864, 408 N.W.2d 320 (1987), the Nebraska Supreme Court found that the division of marital property was an abuse of discretion where the trial court did not value some of the assets upon which the parties had presented evidence and did not make the adjustments to the value of those assets supported by the record. Although there may be a dispute as to the value of the items, so long as there is evidence to support the court's valuations, a court's valuation of the property will not be considered an abuse of discretion. *Id.* See, also, *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018) (determining it was abuse of discretion to accept value without supporting evidence).

Here, the district court's valuation of these two vehicles was supported by the evidence in the record. In his discovery responses, Jason stated that the 2005 Ford Ranger had a value of

$5,000. However, at trial, Jason testified and submitted a Kelley Blue Book valuation in support of his opinion to show that the vehicle had no value any longer because it sustained additional damage to the back end since the time he completed his answers to interrogatories. The vehicle was still operable. Jason testified that prior to the vehicle sustaining the damage to its back end, it was probably "worth a couple thousand" dollars. Turning to the 1976 Ford F-250, in his answers to interrogatories, Jason stated that the value of this vehicle was $10,000. However, at trial, Jason testified as the owner of the vehicle, and provided a third-party valuation to support his claim that the vehicle was worth only $5,400. Lei Ann did not present evidence as to the value of the 1976 Ford F-250; instead, she relied on the discovery responses that Jason provided. Therefore her arguments as to both vehicles is to hold Jason to his original estimates. The question for the district court was how to weigh Jason's contrasting valuations. We consider and give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Chmelka v. Chmelka*, 29 Neb. App. 265, 953 N.W.2d 288 (2020). We note that with respect to the 2005 Ford Ranger, the value attributed to the vehicle is more than that opined by Jason at trial. Because the valuations are supported by the record, we do not find that the court abused its discretion in determining the values of the 2005 Ford Ranger Super Cab XLT and the 1976 Ford F-250.

(c) 2018 Ford F-150 and Loan Balance

Lei Ann argues that the court abused its discretion when it simultaneously valued the 2018 Ford F-150 at the time of trial with a value of $53,100 while using the original loan balance of $56,680 from May 2018 for the vehicle. At the time of trial, the loan balance had been reduced to $44,634.19. She argues that the court should have used the loan balance at the date of trial which would have established that the net value of the vehicle includable in the marital estate was approximately $9,000.

As a general rule, the marital estate includes only property accumulated and acquired during the marriage through the joint efforts of the parties. *Dormann v. Dormann*, 8 Neb. App. 1049, 606 N.W.2d 837 (2000). In *Dormann*, we determined that the parties' vehicle should not have been included in the marital estate when the vehicle was acquired after the parties' separation, was titled in the name of the husband's corporation, was not paid for with marital assets, the wife knew it was acquired after the parties separated, and that she never made any payments on the vehicle. *Id.* In the present case, the vehicle was purchased after the parties separated and is owned by Jason's business. No evidence was adduced indicating that Lei Ann contributed to any payments made on the vehicle. Accordingly, we do not believe that the vehicle should have been included in the marital estate. The court determined that the truck's value was zero for purposes of the marital estate. This had the same effect as if it had determined that the truck was not part of the marital estate. Therefore, although we do not agree with the manner in which the district court reached its conclusion on this issue, we find that the court reached the correct result and thus affirm its conclusion. See *Bel Fury Invest. Group v. Palisades Collection*, 19 Neb. App. 883, 814 N.W.2d 394 (2012).

(d) Hot Tub

Lei Ann argues that the district court should have taken into account the value of the hot tub in determining the value of Jason's personal property. She contends that the value of the hot tub was not included in the appraisal of the house. She argues that there is a presumption that the hot tub was purchased with marital funds and the value of the hot tub must be included. The hot tub had a value of $8,000 which, according to her, was otherwise not included in any part of the decree. Jason testified that he purchased the hot tub after the parties separated due to the previous hot tub breaking down. He believed that the value of the hot tub was included in the appraisal of the home. When the court asked Jason about the hot tub, Jason stated that the new hot tub was pictured in the appraisal report completed in June 2018.

Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). A court is not bound to accept a party's word in lieu of documentary evidence; a court is able to assess the credibility of the evidence presented to it and determine to what evidence to give weight. *Doerr v. Doerr*, 306 Neb. 350, 945 N.W.2d 137 (2020). Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. *Burgardt v. Burgardt, supra.* However, upon appeal, where the parties gave differing versions of the value of the items, we give weight to the fact that the trial court, which heard the testimony below, believed one witness over another. *Walker v. Walker*, 9 Neb. App. 694, 618 N.W.2d 465 (2000).

In the present case, there was no documentary evidence that directly stated that the hot tub was included in the property appraisal. However, according to Jason, the appraisal was completed after the hot tub was installed. The appraisal included pictures taken of the pool area which included the hot tub. The court asked Jason specifically about the hot tub and whether it was the new one or the old one. There was nothing in the record to directly contradict that the hot tub was not included in the appraisal. Under the facts and circumstances of the case, it was not inherently improbable, unreasonable, or inconsistent to determine that the hot tub was included within the appraisal report establishing the value of the marital residence. Therefore we find no abuse of discretion in the finding of the district court. Because we determine that the court did not abuse its discretion in determining that the hot tub was included in the appraisal of the marital residence, we find no need to address Lei Ann's secondary argument that there would be a presumption that it was purchased with marital funds.

(e) Miscellaneous Personal Property

Finally, Lei Ann argues that the court abused its discretion in not including the value of firearms, tools, and equipment that had a value of $4,551 on the balance sheet in its calculation of the marital estate. The court valued the personal property in Jason's possession to be $8,285, which for the most part appears to be arrived at based on Lei Ann's estimate of the value of personal property in Jason's home less $8,000 for the hot tub. The court also stated that the parties were each to receive "appraisal items in his/her name" but did not value this property separately. Jason argues that the court correctly valued the property because it relied on his testimony in which he

estimated the personal property in his possession to be $10,000 which included all of the items in the personal property appraisal.

It is an abuse of discretion when the trial court does not value some of the assets upon which the parties presented evidence and does not make adjustments to the value of those assets as supported by the record. *Staman v. Staman*, 225 Neb. 864, 408 N.W.2d 320 (1987). In the present case, it appears that a monetary value was given to all items awarded to Lei Ann. We can find no evidence that other items were awarded to Lei Ann over and above the $9,953 in value awarded to her by the court. In contrast, there is evidence that Jason received marital items with a value in excess of the $8,265 awarded to him on the balance sheet. If we accepted Lei Ann's estimates of value, the amount that could be placed on Jason's side of the ledger would be the $8,265 plus the $4,551 of value in firearms and tools, less any of these items found to be nonmarital. The district court did find that the items claimed to be nonmarital by Jason in exhibit 76 should be classified as such. This would deduct $535 from the value of marital personal property awarded to Jason. However the court did not specify how it otherwise reached its conclusion. In his proposed balance sheet, Jason listed $10,000 worth of items of personal property being awarded to him. Under this estimate, Jason apparently contested at least some of the valuations made by Lei Ann of household items awarded to him. We find that the court abused its discretion in determining the value of Jason's personal property was not at least equal to the $10,000 estimation made by Jason. However, we give deference to the district court's opportunity to see and hear the witness' testimony to the extent of not placing a higher value on the personal property beyond Jason's estimate. As such, we find that the balance sheet reflecting personal property should reflect a value of $10,000 for personal property awarded to Jason and accordingly modify the order of the district court. The balance sheet below demonstrates this modification.

3. MODIFIED BALANCE SHEET

Having considered Lei Ann's assignments of error and the arguments of the parties, we modify the balance sheet to reflect the following award of marital property:

| Asset | Value ($) | Lei Ann ($) | Jason ($) |
| --- | --- | --- | --- |
| Marital Portion of Equity in Marital Residence | 96,205 | 0 | 96,205 |
| Personal Property on ASF Appraisal Report | 9,953 | 9,953 | 0 |
| Personal Property in Jason's possession | 10,000 | 0 | 10,000 |
| 1976 Ford F-250 | 5,400 | 0 | 5,400 |
| 2005 Ford Ranger Super | 3,000 | 0 | 3,000 |
| 2013 Ford Expedition | 10,589 | 10,589 | 0 |
| F-250 Parts | 2,000 | 0 | 2,000 |
| John Deere Mower | 500 | 0 | 500 |
| Life Insurance policy Jason (x693) | 11,506 | 0 | 11,506 |
| Life Insurance policy Jason (x292) | 11,543 | 0 | 11,543 |
| Life Insurance policy Jason (x074) | 13,623 | 0 | 13,623 |
| Life Insurance policy Jason (x067) | 16,107 | 0 | 16,107 |
| Life Insurance policy Jason (x222) | 20,809 | 0 | 20,809 |
| Life Insurance policy Lei Ann (786) | 3,782 | 3,782 | 0 |
| Arkfeld Wealth Management Account | 19,986 | 19,986 | 0 |

| | | | |
|---|---:|---:|---:|
| Jason Finch & Associates - personal property | 20,995 | 0 | 20,995 |
| 2014 Ford F-150 | 19,115 | 0 | 19,115 |
| Marital Estate | 275,113 | 44,310 | 230,803 |
| Debt | (69,485) | (15,874) | (53,611) |
| Adjusted Net Marital Estate | 205,628 | 28,436 | 177,192 |
| Equalization | | 74,378 | (74,378) |
| TOTAL | | 102,814 | 102,814 |

Pursuant to this court's findings, we modify the decree of dissolution entered by the district court to require Jason to pay Lei Ann $74,378 in order to equalize the marital estate. We further modify the decree to state that Jason shall pay the equalization payment in 12 monthly installments of $6,198 beginning on the first day of the month following the issuance of the mandate herein.

## VI. CONCLUSION

Based on our de novo review of the record, we affirm the district court's decisions with regard to equal division of the Northwestern Mutual IRA at its present value, its determination that $7,000 of the equity in the marital residence should be set off to Jason as a nonmarital asset, its valuations of the 2005 Ford Ranger and the 1976 Ford F-250, and its finding that the hot tub should not be valued separately from the value of the marital residence. We further find that the 2018 Ford F-150 purchased following separation by Jason's business is not a marital asset. We modify the decree to award Jason and Lei Ann the cash value of all life insurance policies in their respective names with a valuation date as of the time of separation. We further modify the decree to value the personal property awarded to Jason at $10,000. In accordance with the foregoing findings we modify the decree of dissolution to require Jason to make an equalization payment to Lei Ann in the amount of $74,378 in the manner set out herein.

AFFIRMED AS MODIFIED.