IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SCHUMANN V. SCHUMANN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STEPHENIE J. SCHUMANN, APPELLANT,

V.

RICHARD J. SCHUMANN, APPELLEE.

Filed April 16, 2024.    No. A-23-494.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Stephenie J. Schumann, pro se.

Nancy R. Shannon, of Kinney Mason, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Stephenie J. Schumann appeals the Douglas County District Court's dismissal of her application for contempt. After reviewing the record, we affirm the district court's order.

## BACKGROUND

Stephenie and Richard J. Schumann were divorced in July 2017. During their marriage, they had one child, a daughter, born in 2013.

In March 2018, Stephenie sought modification of the decree because Richard moved out of state. In July 2020, the district court issued its modification order. It ordered that Stephenie retain sole legal and physical custody of the minor child subject to "scaled in supervised visitation by" Richard. It also ordered that Richard pay $469 per month in child support and 50 percent of "the costs of work or educational-necessitated and relative daycare."

- 1 -

On April 18, 2023, Stephenie, representing herself, filed an application and affidavit for order to show cause. She requested that Richard pay "all past due invoices, late fees, and bank fees"; that the district court inform Richard he will pay 50 percent of future invoices within 10 days; that Richard will reimburse Stephenie $2,450 for attorney fees she incurred for a demand letter; and require Richard to pay his arrears in full without an "extended purge plan." She argued that Richard had not been paying half of the daycare expenses. She also requested the district court "exercise its contempt powers and schedule an order to show cause hearing."

*Hearing on Stephenie's Application.*

At the show cause hearing, Stephenie claimed that Richard owed her $8,459.75 in daycare costs. She testified that during the school year she relies on childcare services for 30 to 32 hours per week. During the summer, she relies on childcare services for 9 to 10 hours a day for 5 days a week. Stephenie pays her mother $16 an hour for daycare services, and her mother lives with Stephenie and the minor child. Her mother does not watch any other children.

Stephenie originally testified that she paid her mother $16 an hour because that is what she paid her previous childcare provider. She explained she paid her mother for childcare in return for her having to cut down her hours at work to provide that childcare. Her mother is a part-time loan officer, and usually works "sporadically in the evenings" according to Stephenie. The last time her mother worked full-time was in January 2020, and she began providing childcare in July 2021. Stephenie testified using her mother for childcare was more convenient, since she lives with them.

On cross-examination, Richard's attorney asked Stephenie if the minor child's previous childcare provider only charged $10 per hour. Stephenie answered, "That might be. I don't remember. I don't recall." Eventually, Stephenie admitted that the previous childcare provider charged $10 an hour.

The district court admitted into evidence a spreadsheet Stephenie created to show daycare expenses she incurred and payments made by Richard. Stephenie testified that her spreadsheet showed that Richard only paid the childcare expenses he thought were appropriate, which meant Stephenie had to pay more than half of the childcare expenses. The district court also admitted transaction information into evidence that showed Stephenie's spreadsheet was missing seven total payments from Richard from August 2021 to April 2022 with payments ranging from $240 to $500.

Richard testified that he believed he should pay $5 an hour for his half of childcare expenses. He explained that this was based on a market rate survey completed by the Buffet Early Childhood Institute at the University of Nebraska and the Nebraska Department of Health and Human Services in 2021. Richard relied on the urban area rate for childcare in Douglas County to reach his conclusion that the appropriate childcare rate should be $10 per hour. The survey was received into evidence without objection.

After the conclusion of evidence, the district court ruled from the bench that charging $16 per hour for childcare was not fair and reasonable under the circumstances. It reasoned that for contempt of court, the moving party must prove by clear and convincing evidence that the other party is not complying with the court's order. But there is an implied duty of good faith in that the daycare expenses are reasonable both in the amount of daycare and the rate charged. Since the daycare expenses were not reasonable, the district court dismissed Stephenie's complaint.

*District Court Dismisses Stephenie's Complaint.*

The district court entered a written order dismissing its order to show cause with prejudice. It reasoned that

> [Stephenie] has her mother, who resides with her, provide the daycare of the parties' ten-year-old daughter. [Stephenie's] mother, the maternal grandmother, is charging $16.00 per hour for this daycare service. She had been unemployed for about a year and a half and began providing this daycare in July of 2021.

The court further noted the childcare survey that indicated the "average daycare for a 10-year-old is approximately $5.00-$7.00 per hour." It concluded that Richard's offer to pay half of $10 per hour "is more than reasonable under the circumstances." It also ordered Stephenie to pay $500 in attorney fees to Richard. Stephenie appeals.

## ASSIGNMENTS OF ERROR

As a preliminary matter, Stephenie's brief does not conform with our briefing standards under Neb. Ct. R. App. P. § 2-109. Her brief does not include separate, concise statements for each error she contends was made by the district court. She did not separately number and paragraph each assignment of error. Her brief does not contain an argument section. Although Stephenie attempts to cure many of these defects in her reply brief, the purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. It cannot cure defects contained in the appellant's opening brief. See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

Stephenie's opening brief does provide varied paragraphs of assignments of error that contain propositions of law, a summary of the argument section, and a conclusion. From these sections, we can identify two arguments that could be considered assigned and argued, which is necessary for our review: (1) the district court erred in failing to grant Stephenie's motion for contempt and (2) the district court was biased and prejudiced Stephenie.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

## ANALYSIS

*Stephenie's Application for Contempt.*

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Id.* Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence. *Id.*

Contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. *Id*. Through its inherent powers of contempt, a court may order restitution for damages incurred as a result of failure to comply with a past order. *Id*. And a court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Id*. Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id*.

Here, the district court dismissed Stephenie's application for contempt because it found that Richard should not be held in contempt for failing to pay the additional $3 an hour that resulted from Stephenie paying her mother $16 per hour for childcare. Evidence at trial showed that Richard was paying for the minor child's childcare; however, it was at a lesser rate than what Stephenie claimed her mother charged. The district court found that under the circumstances, charging $16 per hour was unreasonable.

The district court reasoned that $16 per hour was unreasonable for multiple reasons. First, Richard provided a study completed by the Buffet Early Childhood Institute at the University of Nebraska and the Nebraska Department of Health and Human Services that showed the average daycare for a 10-year-old in Douglas County is approximately $5 to $7 per hour. Richard was willing to pay half of $10 per hour. Second, the current provider is Stephenie's mother, who resides with Stephenie and the minor child, and was unemployed for a year and a half before beginning her employment as the minor child's childcare provider. Lastly, when Stephenie was asked how she arrived at $16 per hour, she testified that is what she paid the prior childcare provider. Stephenie later admitted that she paid the prior childcare provider $10 per hour. The district court did not clearly err in finding that $16 an hour for childcare was unreasonable under the circumstances.

Stephenie argues that Richard misrepresented the facts and misled the court in reference to previous hearings. The district court did not discuss any previous hearing in its order dismissing Stephenie's application for contempt. Furthermore, Stephenie provided no proof during the trial that Richard misrepresented any facts or misled the court. Instead, Stephenie was impeached on her explanation that she paid her mother $16 per hour because it was the same rate as the previous childcare provider. Since the district court is in the best position to assess the credibility of witnesses, and Stephenie has failed to show that the district court clearly erred in its finding of fact, we reject her argument. See *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

Stephenie also argues that the court should not have relied upon the childcare survey; however, she did not object when it was offered into evidence. The weight to be given to the survey was for the trier of fact. See *Doerr v. Doerr*, 306 Neb. 350, 945 N.W.2d 137 (2020) (court is able to assess credibility of evidence presented to it and determine what evidence to give weight to). We find no error in the court's reliance upon the survey to determine the current daycare rate was unreasonable under the circumstances.

*Judicial Bias and Prejudice.*

Stephenie argues the district court's conduct at trial "was intimidating and inappropriate with body language, tone of voice, as well as volume and abuse of discretion." Brief for appellant at 24. She claims the district court expressed that $16 per hour was outrageous but never looked at

her spreadsheet that was admitted into evidence. From her assignment of errors section, we surmise that Stephenie's claim is that the district court was biased against her.

Judicial rulings alone almost never constitute a valid basis for a claim of bias or partiality against a trial judge. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). Nor can a judge's ordinary efforts at courtroom administration be a basis for bias or partiality. *Id*. Opinions formed by the judge on the basis of facts introduced or events occurring in the court of the current proceedings, or of prior proceedings, do not constitute a basis for a claim of bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id*. A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality. *Thompson v. Millard Pub. Sch. Dist. No. 17*, 302 Neb. 70, 921 N.W.2d 589 (2019).

Here, there is nothing in the record to indicate that the district court displayed a deep-seated favoritism or antagonism toward either party. Stephenie's claims are conclusory and offer little argument to support her claims. She offers no legal or evidentiary support to aid her claims that the judge was biased, other than her criticisms of his body language, tone of voice, and volume. Given the high standard a party must meet to prove judicial bias, Stephenie's claims do not meet this burden of proving judicial bias based on the district court's conduct at trial.

CONCLUSION

For the foregoing reasons, we affirm.

AFFIRMED.