IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JORDING V. SANCHEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ALEXANDER JORDING, APPELLANT,

V.

MCKENZIE SANCHEZ, APPELLEE.

Filed December 26, 2024.    No. A-24-250.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Jessica M. Laughlin and Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

McKenzie Christina Sanchez, pro se.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Alexander Jording appeals from the order entered by the Scotts Bluff County District Court, which awarded Jording and McKenzie Sanchez joint legal custody of their daughter and awarded Sanchez primary physical custody. Jording argues that the district court failed to properly consider the child's best interests. Finding no abuse of discretion, we affirm.

## STATEMENT OF FACTS

Jording and Sanchez were involved in a brief relationship which resulted in the birth of their daughter, Evelyn, born in April 2023.

On April 26, 2023, Jording filed a complaint for custody, visitation, and child support. He alleged that it was in Evelyn's best interests for the parties to be awarded joint legal and physical

custody. Sanchez filed an answer and counterclaim, in which she sought sole legal and primary physical custody of Evelyn. On May 18, the district court entered a temporary order awarding the parties joint legal custody of Evelyn with sole physical custody placed with Sanchez. In addition to awarding child support, the court set a parenting time schedule which provided for a graduated schedule of parenting time with Jording. In October, Jording moved for modified temporary orders in which he sought additional parenting time with Evelyn. No order ruling on this motion is contained in our record on appeal.

A trial was held on March 15, 2024. Both parties testified, along with Jording's mother and sister; and Sanchez' friend, mother, and her parent coach with Healthy Families of America. Numerous documents were received in evidence, including an email from Samuel Crouch, a clinical counselor, the admission of which was stipulated by the parties.

At the time of trial, both parties lived in Scottsbluff, Nebraska. Jording moved to Scottsbluff about 7 years ago, and he resides with his mother and younger brother. Jording and Sanchez met at work and dated for about a month, at which time Sanchez became pregnant. Jording attended two prenatal appointments, but Sanchez did not want him at any further appointments. They did open the sonogram envelope together to learn the sex of the baby.

For a couple of weeks after Evelyn's birth, Jording spent time at Sanchez' home in order to see Evelyn. After the entry of the temporary order, the parties first exchanged Evelyn at the courthouse and police station, but moved the exchanges to each other's homes after a period of time. The exchanges have gone smoothly for the most part. The parties are able to communicate regarding Evelyn's routine and they have been able to share pictures of Evelyn and remain friendly. The parties have been able to settle any disagreements respectively. Jording believes that Evelyn has a good bond with Sanchez, and Jording has no concerns about Sanchez's ability to provide for Evelyn's physical and emotional care.

Jording describes Evelyn as "full of energy" and "fun to be around." When they are together, they play, go outside, and Jording reads to Evelyn. Evelyn does not have any outside caregivers during Jording's weekend parenting time; he describes that they are "inseparable." Jording does all of the feeding, diaper changes, and bathing when Evelyn is with him.

Jording testified that it would be in Evelyn's best interests to see both him and Sanchez as much as possible. On cross-examination, Jording specified that he was looking for a 50/50 arrangement, on an alternating weekly basis. In the event that schedule was followed, Jording's mother would provide care for Evelyn while he is working.

Jording recently became employed by Aulick Industries; he works 55 hours per week, Monday through Friday. He will have health insurance available to him, which he plans to provide for Evelyn. At the time of trial, Jording shared a bedroom with Evelyn in his mother's home, however, Jording was planning to save money and eventually obtain his own home. The bedrooms in the home do not have doors; rather, they have a curtain to provide for privacy.

Jording's mother and sister testified that Jording is a very "hands on" parent. The sister affirmed that Jording provides Evelyn with a safe, nurturing, and stable environment.

Sanchez lives in a two-bedroom apartment with Evelyn only, and Evelyn has her own bedroom. Sanchez began working at the local hospital as a unit secretary and a certified nursing assistant approximately 3 months before trial. She works one or two 12-hour shifts per week from 6 a.m. to 6 p.m., on Mondays and Thursdays, although she has the ability to pick up additional

shifts. Sanchez does not have benefits through her employment and is on Medicaid. Sanchez supplements her income with dog-sitting and selling enchiladas. Sanchez' sister currently provides daycare for Evelyn when Sanchez is at work, however, her sister is planning to move from Scottsbluff. Sanchez plans to have either an aunt or a friend provide care for Evelyn.

Sanchez described Evelyn as a happy, energetic, healthy baby. They enjoy playing together and reading books. Evelyn has begun to walk and climb and has learned a few words. Evelyn is still breast feeding approximately seven or eight times a day. She is also eating some solid foods. When Jording has parenting time, Sanchez provides him with an adequate supply of milk. Sanchez indicated that she has an "inseparable" bond with Evelyn and has a hard time being away from her.

The parties generally attend Evelyn's medical appointments together. The parties initially disagreed about whether or when to have Evelyn vaccinated, but they were able to resolve that disagreement and Evelyn has been vaccinated.

Sanchez agreed that Jording has been involved in Evelyn's life since her birth. She agreed that he provides a safe, stable, and nurturing environment for Evelyn, although she has not observed their interactions. Sanchez agreed that there had not been any significant issues with Jording's parenting time. Sanchez indicated that she and Jording get along and communicate fairly well regarding Evelyn. Sanchez expressed that Evelyn is exhausted when she returns from overnights with Jording. Sanchez also had concerns that the bedrooms at Jording's house do not have doors and there is no privacy. Sanchez requested legal and physical custody of Evelyn, along with a parenting time schedule similar to the temporary order.

Sanchez' friend and former roommate described Sanchez as an "amazing mother" who is very responsible with Evelyn. According to the friend, Sanchez puts Evelyn before anyone else and the two are very bonded.

Sanchez' mother testified that Sanchez is a very calm and patient mother, and she has observed a close bond between them. The mother indicated that her extended family spends a lot of time together, including with Evelyn. According to the mother, Sanchez invited Jording and his family to Easter with her family and to her baby shower.

Ashleigh Aufforth-Rada is employed with the Panhandle Public Health District/Healthy Families of America; her position is a parent coach specialist. Aufforth-Rada has worked with Sanchez as her parent coach since June 2023. They meet once a week and have been engaged in the "Growing Great Kids" curriculum and the "Circle of Security" program. Together, they work on Evelyn's physical, emotional, and social milestones. Aufforth-Rada described that Evelyn is advanced physically and is very strong. She testified that Sanchez does a great job reading Evelyn's cues and caring for Evelyn.

The parties stipulated to receipt of an email containing an "expert written opinion" from Crouch. He stated that in his clinical opinion as a counselor, "having both parents involved in a child's upbringing is an optimal condition." He also stated that "research shows that successful father-infant bonding following the postpartum period reduces the potential for cognitive delays and increases positive neurological development." Finally, he stated that "further into their childhood, co-parenting can positively impact their social skills development, improve their ability to form healthy meaningful attachments, which impacts the child's ability to regulate their

emotions and manage relationships." There is no indication that Crouch personally saw either parent or Evelyn.

The district court entered an order on March 18, 2024, which awarded the parties joint legal custody of Evelyn. The court placed primary physical custody with Sanchez. The court made the following findings:

> Currently, physical custody with [Sanchez] is in the best interests of Evelyn as she is not yet one year of age, and [Sanchez] is breast feeding. Although both parents are fit and provide a healthy environment for Evelyn, constant transfers for extended periods is not in the best interests of Evelyn at this age. A one-year-old is totally reliant on parents to perceive and supply her needs, and a single stable home situation is most appropriate at this age.

The district court further ordered child support to be paid by Jording, and provided for specified parenting time with Jording, including alternating weekends and Monday overnights, and alternating holidays.

## ASSIGNMENT OF ERROR

Restated and summarized, Jording assigns that the district court did not properly consider the child's best interests in its award of physical custody to Sanchez.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Franklin M. v. Lauren C.*, 310 Neb. 927, 969 N.W.2d 882 (2022).

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021).

## ANALYSIS

Jording argues that the district court did not make a determination based on the best interests of the child.

When deciding custody issues, the court's paramount concern is the child's best interests. *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018). The Nebraska Parenting Act, Neb. Rev. Stat. § 43-2923(6) (Reissue 2016), provides that [i]n determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of foregoing factors and:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
> (c) The general health, welfare, and social behavior of the minor child;

- 4 -

(d) Credible evidence of abuse inflicted on any family or household member[;] and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. See *Kashyap v. Kashyap, supra*. The best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. See *Chmelka v. Chmelka*, 29 Neb. App. 265, 953 N.W.2d 288 (2020).

In our de novo review of the record and the best interests factors, we find no abuse of discretion by the district court in its determination that it was in Evelyn's best interest to have her primary physical custody placed with Sanchez, and to be provided parenting time with Jording as set forth in the court's order. The district court found that both parents are fit and provide a healthy environment for Evelyn. We agree. By all accounts, both parties provide good care to Evelyn, and she is a thriving, happy, healthy baby. They have generally been able to cooperate in making decisions regarding Evelyn's care and well-being, and their parenting exchanges have been appropriate.

Evelyn has been in Sanchez' primary care since her birth. Although she is still breast-feeding Evelyn, Sanchez is able to provide sufficient milk to Jording for use during his parenting time. Sanchez has a two-bedroom apartment, and Evelyn has her own bedroom. Jording shares a bedroom with Evelyn that does not have a door for privacy (although there is a curtain), and the home is also occupied with other family members. Sanchez works fewer hours than Jording, and both parties can utilize family members to care for Evelyn while they are working. Sanchez has availed herself of a parent coach to learn about infant and childhood development.

Overall, we conclude that the record supports the district court's finding that Sanchez is able to provide the more stable situation for Evelyn at this time.

Jording asserts that the district court applied the "tender years doctrine," which has been disfavored by the Nebraska appellate courts. In *Vance v. Vance*, 231 Neb. 334, 436 N.W.2d 177 (1989), the Nebraska Supreme Court was called upon to review an order which awarded physical possession of an 11-month-old child to the father, subject to substantial visitation in the mother. The mother argued that it was error to award custody of the young child to the father, citing *Turner v. Turner*, 205 Neb. 6, 286 N.W.2d 100 (1979) (acknowledging tender age of child is matter to consider in determining custody, but rejecting mother's argument that custody of child of tender years should be awarded to her as natural mother since child was 4 years old, finding no presumption of degree of fitness arises from sex alone). The court in *Vance* rejected the mother's argument, finding that the "tender years" doctrine was not controlling in matters of custody and that such matters were now controlled by Neb. Rev. Stat. § 42-364(2) (Reissue 1988), which provided:

In determining with which of the parents the children or any of them shall remain, the court shall not give preference to either parent based on the sex of the parent, and no presumption shall exist that either parent is more fit to have custody than the other.

The Supreme Court in *Vance* held that the ultimate decision as to custody is based on the best interests of the child, and it affirmed the decision of the district court.

The current version of the foregoing statute is largely similar and provides that custody shall be determined on the basis of the best interests of the child as defined in the Parenting Act. See Neb. Rev. Stat. § 42-364(2) (Cum. Supp. 2022).

We do not view the district court's order as applying a preference in favor of Sanchez on the basis of her sex or a presumption that she is more suitable as a result of being the mother. Although the court referenced the fact that Sanchez was still breast-feeding, in our de novo review, we do not view that as a determining factor. The court also referenced Evelyn's young age, however, that is an appropriate factor to consider as noted above. See *Chmelka v. Chmelka, supra*. Clearly, both parties love Evelyn, are fit parents, and can provide appropriate care for her health and welfare. In this instance, we give weight to the fact that the district court heard and observed the witnesses, and we find no abuse of discretion in its award of primary physical custody to Sanchez, subject to Jording's parenting time.

## CONCLUSION

The district court properly considered the best interests of the child in making its custody determination. We affirm the order in all respects.

AFFIRMED.